UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MARY DOE, (A Twelve Year Old Female) ) <br> By Next Friend and Natural Parent, ) <br> KENT BLACKWELDER, and ) <br> KENT BLACKWELDER, Individually, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> SPECPUB, INC., d/b/a ) <br> SPECIALTY PUBLICATIONS, ) <br> ) <br> Defendant. ) | No.: 3:07-CV-486 <br> (VARLAN/GUYTON) |

## PRETRIAL ORDER

This matter is before the Court on the parties' proposed Agreed Pretrial Order [Doc. 113]. After reviewing the parties' proposal, the Court enters the following pretrial order.

**A. JURISDICTION:** This is a tort action brought against the Defendant, SpecPub, Inc. d/b/a Speciality Publications (hereinafter referred to as "Defendant"), a Delaware Corporation, with its principal place of business located at 1355 Sansome Street, San Francisco, California 94111, by residents of the State of Tennessee. Jurisdiction is predicated on Diversity of Citizenship pursuant to the jurisdictional grant of 28 U.S.C. § 1332. Jurisdiction is not in dispute.

**B. PLEADINGS:** The pleadings are amended to conform to the pretrial order.

**C. SHORT SUMMARY OF PLAINTIFFS' THEORY:** The Plaintiff, Mary Doe (a twelve year old female), was a twelve (12) year old female at the time of the incident.

The Plaintiff, Kent Blackwelder, is the father of Mary Doe. The Defendant publishes, sells, and markets various magazines, literature, and videos containing sexually explicit material. The Defendant periodically mails solicitations for its various products using the United States Postal Service. The Defendant periodically used the United States Postal Service to mail sexually oriented advertisements. Prior to May 28, 2007, the Defendant submitted an application to the United States Postal Service allowing it to prepay for postage at a reduced rate to cover the cost of mailing for pre-sorted mail. When it submitted its application, Defendant specifically agreed to follow the U.S. Department of the Post Office Domestic Mail Manual Rules and Regulations ("Domestic Mail Manual").

On or before May 2007, Defendant caused to be mailed to Plaintiff, Kent Blackwelder, a sexually oriented advertisement using pre-paid postage for pre-sorted mail. The advertisement mailed by the Defendant to Plaintiff, Kent Blackwelder, was unsolicited, and Defendant failed to follow specific rules and regulations as set forth in the Domestic Mail Manual in connection with said mailing.

On or about May 28, 2007, Mary Doe (a twelve year old female), saw an unopened plain white envelope addressed to her father at the family home while looking through the family mail. The envelope had been mailed by the Defendant. The envelope contained on the outside, the message:

"New! Free DVD offer enclosed!"

It also contained:

"Specialty Publications, P.O. Box 4356, Los Angeles, CA 90078-4356"

and "PRSRT STD U.S. POSTAGE PAID SPLLC."

The envelope contained sexually explicit advertising that had been mailed by Defendant's agents or employees through the U.S. Mail. There were no warnings on the envelope that the envelope contained sexually oriented advertising. Mary Doe, being a curious child and thinking that the "Free DVD" offer was for a Disney movie, opened the envelope at which time she was horribly shocked to see numerous sexually explicit color photographs of thirteen nude males with erect penises plus other photographs of male genitalia. The photographs were not enclosed in a sealed envelope or sealed cover. The "Free Video" being offered by Defendant in its mailing to the Plaintiff, Kent Blackwelder, was "Titan Men's Farm Fresh" "XXX" hardcore with a "paid subscription" to "Freshmen" and the brochure contained numerous pictures of naked men sexually aroused. Mary Doe was shocked and horrified after she saw the contents of the envelope and she ran to her father to show him what she had found, and he likewise was shocked, disgusted, and enraged.

Persons mailing sexually orientated advertisements are required to comply with 39 U.S.C. § 3010, which provides, in part:

"Sec. 3010. Mailing of sexually oriented advertisements.

(a) Any person who mails or causes to be mailed any sexually oriented advertisement shall place on the envelope or cover thereof his name and address as the sender thereof and such mark or notice as the Postal Service prescribe.
. . .
(d) . . . 'Sexually oriented advertisement' means any advertisement that depicts, in actual or simulated form, or explicitly

3

describes, in a predominantly sexual content, human genitalia, any act of natural or unnatural sexual intercourse, any act of sadism or masochism, or any other erotic subject directly related to the foregoing . . . ." [Emphasis Provided].

39 U.S.C. § 3010 was in full force and effect on May 28, 2007. The U.S. Postal Service has prescribed regulations for domestic mail in its Domestic Mail Manual which has been adopted by 39 C.F.R. 111.1. Persons mailing sexually oriented advertisements are required to abide by the provisions of 39 C.F.R. 111.1 and by the Domestic Mail Manual's instructions for mailing sexually orientated advertisements. Rule 508 of the Domestic Mail Manual, Part 9.5 provides:

> "9.5   Envelope Marking
>
> Section 3010(a) authorizes and directs the USPS to provide a mark or notice that must be placed on the envelope or cover of any sexually oriented advertisement sent through the mail, with the sender's name and address. The following provisions implement this authority and direction:
>
> a.   Any person who mails or causes to be mailed any sexually oriented advertisement must place in the upper left corner of the exterior face of the mailpiece, whereon appear the address designation and postmarks, postage stamps, or indicia thereof, the sender's name and address. In the right portion below the postage stamp, or indicia thereof, and above the addressee designation, there must be placed "Sexually Oriented Ad." The words "Sexually Oriented Ad," however, need not be placed on the exterior envelope or cover of a mailpiece containing such an advertisement, if the contents of the mailpiece are enclosed in a sealed envelope or cover, inside the exterior envelope or cover, and the sealed envelope or cover bears conspicuously the words "Sexually Oriented Ad."
>
> b.   The name and address of the sender and the required legend, if it is placed on the exterior face of the mailpiece, must be printed in a type size no smaller that used for any other word on the envelope or

4

other cover, and never smaller than 12-point type. Such type must be no less conspicuous than the boldest type used to print other words on the exterior face of the mailpiece.

c. The contrast between the background and printing of the sender's name and address and the contrast between the background and the printing of the required notice must be no less than the contrast between the background and printing of any other word on the envelope or other wrapper.

d. A clear space no less than ¼ inch wide must surround the sender's name and address and the required notice, separating each from any other matter on the same envelope or cover. [Emphasis Added].

Rule 508 of the Domestic Mail Manual, Part 9.5, was in full force and effect on May 28, 2007, and Defendant was required to adhere to it in the mailing of sexually oriented advertisements.

Prior to May 28, 2007, the Defendant provided Plaintiff, Kent Blackwelder's name and address to a data base for future use by it for advertising solicitations. Defendant has asserted it obtained Plaintiff, Kent Blackwelder's name and address because he entered an online contest, but this is not true. Plaintiff never entered such a contest, and he never gave anyone permission to mail him sexually oriented solicitations.

In mailing this sexually oriented advertising to Plaintiffs, Defendant failed to comply with the Domestic Mail Manual's requirements for sexually oriented advertising. In mailing this sexually oriented advertising to Plaintiffs, Defendant violated the provisions of 39 U.S.C. § 3010 and Rule 508 of the Domestic Mail Manual.

The Plaintiffs aver that the Defendant owed the following duties to Plaintiffs, to-wit:

5

A. Not to cause the mailing of sexually oriented advertising as defined in 39 U.S.C. § 3010 to Plaintiffs and others without insuring that the provisions of the U.S. Domestic Mail Manual and 39 U.S.C. § 3010 are fully complied with.

B. Not to provide Plaintiff, Kent Blackwelder's name and address for the receipt of sexually oriented advertising as defined in 39 U.S.C. § 3010 without first obtaining his consent to receive such pornographic advertising.

C. Not to cause sexually oriented advertising as defined in 39 U.S.C. § 3010 to be mailed to Plaintiff, Kent Blackwelder that is unsolicited.

D. Not to cause sexually oriented advertising as defined in 39 U.S.C. § 3010 to be mailed to Plaintiffs and others without insuring the contents are in a sealed envelope that contains adequate warning of its contents.

E. Prior to causing the mailing of sexually oriented advertising as defined in 39 U.S.C. § 3010, to insure that it has sufficient safeguards, regulations, agreements, and/or procedures in place to make sure that the provisions of the U.S. Domestic Mail Manual are complied with, and if said Defendant uses agents or contractors to stuff, package, and/or mail its sexually oriented advertising to make sure its agents or contractors abide by the requirements of the U.S. Domestic Mail Manual.

F. Prior to causing the mailing of sexually oriented advertising as defined in 39 U.S.C. § 3010, to insure that it has sufficient safeguards, regulations, agreements, and/or procedures in place to make sure sexually oriented advertising is not sent to individuals unsolicited or who have not otherwise given their permission to be sent such materials.

The Plaintiffs aver that the Defendant was negligent in the following particulars, to-wit:

A. In mailing unsolicited nude sexually oriented advertising as defined in 39 U.S.C. § 3010 to the Plaintiff, Kent Blackwelder.

B. In mailing unsolicited nude sexually oriented advertising as defined in 39 U.S.C. § 3010 to the Plaintiff and failing to secure the contents in a sealed envelope that contained adequate warning of the contents.

C. In mailing sexually oriented advertising without complying with 39 U.S.C. § 3010 and Rule 508 of the Domestic Mail Manual, Part 9.5.

D. In providing Plaintiff, Kent Blackwelder's name and address to receive sexually oriented advertising as defined in 39 U.S.C. § 3010 without verifying he wanted to receive sexually oriented advertising.

E. In failing to advise contestants that the contest allegedly entered by Blackwelder, that they were consenting for sexually oriented advertising as defined in 39 U.S.C. § 3010 to be mailed to their homes.

All of which singularly, and combined were the direct, prime, principle, and proximate cause of the Plaintiffs' losses and damages hereinafter enumerated.

The Plaintiffs also aver that the Defendant was guilty of negligence per se by violating 39 U.S.C. § 3010 and Rule 508 of the Domestic Mail Manual, Part 9.5, and that said violation was the direct, prime, principle, and proximate cause of the Plaintiffs' losses and damages. The Plaintiffs allege that Defendant was grossly negligent.

Under the circumstances herein alleged, Defendant's conduct was extreme and outrageous, and done either with the specific intent to cause emotional distress or with a reckless disregard of the probability of causing that distress, and Plaintiffs also sue for intentional infliction of emotional distress.

As a proximate result of the negligence of the Defendant, the Plaintiffs sustained great pain of body and mind and severe emotional distress, including shock, horror, humiliation and embarrassment as well as anxiety, and will continue to incur the same, suffered and will continue to suffer great pain of body and mind, and emotional distress.

In mailing the hardcore photographic pornography to Plaintiffs, the Defendant acted intentionally, maliciously or recklessly justifying the imposition of substantial punitive damages.

**D. SHORT SUMMARY OF DEFENDANT'S THEORY:** Prior to 2005, Planet Out, Inc., a corporation, published a magazine known as The Out Traveler. There were certain contests run in The Out Traveler, including in the year 2005. These contests could be entered by electronic means over the internet on the magazine website. Prizes for the successful entrant included certain all-expense paid trips to vacation locations in the United States and Australia. In response to the advertised contests, Kent Blackwelder, by means of electronic communication over the internet, entered one of the contests. He was not a successful entrant and did not win the contest. Part of the rules for contest entry, as published on the internet available for any person to review who entered the contests or otherwise, was the provision that by entering the contest the individual contestant was

8

consenting to their name being placed in a database for the purpose of receiving future direct mail solicitations. As a result of his entry in the contest, contact information for Mr. Blackwelder was stored in a database kept for the Defendant by a corporation known as ARGI. This organization, pursuant to contractual agreement, maintained customer database information electronically for the Defendant. In 2004, ARGI, in conjunction with an organization with whom it did business known as Northshore Agency, submitted an application to the United States Postal Inspector in Melville, New York, seeking approval to use a wafer sealed insert inside a sealed outer envelope in conjunction with material of a sexually explicit nature. This approval was granted as related to the Northshore Agency by Postal Service employee Deborah A. Aveta, after a consultation with Postal Service employee Bob Keeling. This request was submitted by the Northshore Agency at the request of ARGI and the approval thus obtained was used for the purpose of mail solicitation by the Defendant through various subcontractors from that time forward.

In 2007, the Defendant, through its management, decided to offer certain material which it published to individuals who had previously entered contests in The Out Traveler magazine and whose names and contact information had been electronically stored on the database maintained by ARGI. The requested database was provided by ARGI which contained approximately 1003 names, including that of Mr. Blackwelder, and was a small part of a total mailing comprising approximately 200,000 pieces. The publication was then submitted by the Defendant to an organization known as Horah Graphics. Horah Graphics was, under a contractual agreement, an independent contractor with the Defendant that

operated as a middle man arranging for other companies to provide services in conjunction with the mailing. Horah Graphics received the mailing, which is the subject of this litigation, and arranged for the materials to be printed by a separate independent contractual organization known as Transcontinental Printing of Montreal, Canada. Transcontinental Printing prepared and submitted proofs which were approved. Horah Graphics then contracted with National Envelope Company of Elk Grove Village, Illinois, to print and produce the mailing envelopes which it did. After National Envelope Company, acting as a contractor for Horah Graphics, printed and produced the envelopes, they were then transmitted to Commdirect in Summit, Illinois, for the purpose of mailing. The mailing envelope, reply envelope and materials printed by Transcontinental Printing were delivered to Commdirect in Summit, Illinois, which was responsible for addressing the order forms with the addresses provided by the Defendant on its mailing list as received from ARGI, sealing the order form with a wafer seal, and inserting the sealed order form and reply envelope into the outer mailing envelope. Commdirect was then responsible, as a contractor of Horah Graphics, for delivering these materials to the United States Postal Service for the purpose of mailing.

The sequence of events then was as follows. Contact information resulting from Mr. Blackwelder's entry in The Out Traveler contest was stored by ARGI, which then provided the information, pursuant to a request by the Defendant for a specific database, which was then used by Horah Graphics in conjunction with Transcontinental Printing, National Envelope Company and Commdirect to prepare and mail a direct mail solicitation comprising

10

approximately 200,000 pieces. The contest entry file, which contained 1003 names, including Mr. Blackwelder, was a part of this mailing. ARGI, Horah Graphics, National Envelope Company, Transcontinental Printing and Commdirect are not owned by or controlled by the Defendant or any individual or corporation connected with the Defendant, but are and were independent contractors specifically retained either by the Defendant or Horah Graphics for the purposes of database storage and retrieval and direct mail solicitation, preparation and transmittal.

    It is affirmatively averred that the allegations of the Second Restated and Amended Complaint sound in the tort law of the State of Tennessee and are, therefore, subject to the comparative fault standards as they apply in Tennessee. It is disputed by the Defendant that any tort cause of action of any kind exists and that there is no applicable actionable wrong asserted against the Defendant. That in the event the Plaintiffs should prove by the required burdens of proof their cause of action, the potentially responsible parties should include Horah Graphics, Transcontinental Printing, National Envelope Company and Commdirect in addition to ARGI. The trier of fact should, therefore, if liability is found, be required, pursuant to the comparative fault standards of Tennessee, to apportion any fault in accordance with those standards. The Plaintiffs' Second Restated and Amended Complaint assert various allegations with regard to the method of mailing the material, including the use of the wafer seal for the interior tri-fold in the mail piece. If the allegations of the Second Restated and Amended Complaint are proven, that would be the responsibility of

11

Commdirect. If the printing on the envelope or insert should be shown to be an act generating liability, that would be the responsibility of National Envelope Company.

It is averred that the mailing in question, if it be proven to have been sent as alleged in the Second Amended and Restated Complaint, was entitled to and should receive the full measure of protection pursuant to the First Amendment to the United States Constitution. Despite allegations that the mailing was "obscene" or that it was "hard core pornography", it was neither. As a matter of law, there can be no sustainable allegation that the mail piece in question contained pornography or obscene material until there had been an adjudication by a court of law that it was obscene in accordance with applicable federal constitutional standards. That has never been done nor is it sought by the Plaintiffs in this case.

As constitutionally protected material, the Defendant had a right to use the U. S. Mail for the purpose of transmitting information to the Blackwelder home. The Defendant was not required to obtain the consent or approval of Plaintiff, Kent Blackwelder, for the purpose of any mail solicitation sent to him. The remedy provided by the statute and regulations alluded to in the Second Amended and Restated Complaint by the Plaintiffs is limited to, as far as the Plaintiffs are concerned, having the name of Kent Blackwelder placed on a "do not mail" list pursuant to applicable United States Postal Service regulation. If publications are sent to the Plaintiff, Kent Blackwelder, to which he objects, after he has placed his name on a "do not mail" list, then the federal government, acting through its agencies, may seek sanctions against the offending mailing entity, but not before. To restrict mailings prior to a determination of obscenity or pornography would be an unconstitutional prior restraint.

12

The sections of the United States Code and the Domestic Mail Manual referenced by the Plaintiffs do not provide for a personal cause of action for or on behalf of any citizen. Any assertion that they provide the basis for such a cause of action is misstated and, in fact, contrary to statements made by the Plaintiffs through counsel in other pleadings in this cause.

**E.      THE ISSUES TO BE SUBMITTED TO THE TRIAL JUDGE OR JURY:**

1.      Did Plaintiffs prove by a preponderance of the evidence that Defendant was negligent and/or negligent per se? If so:

    a.      What compensatory damages, if any, is Plaintiff, Mary Doe, entitled to?

    b.      Is the Plaintiff, Mary Doe, entitled to punitive damages? If so, what amount?

    c.      What compensatory damages, if any, is Plaintiff, Kent Blackwelder, entitled to?

    d.      Is the Plaintiff, Kent Blackwelder, entitled to punitive damages? If so, what amount?

2.      Did the Defendant prove by a preponderance of the evidence that other parties were also at fault? If so, which, if any, of the following people/companies do you find to be at fault:

| | |
|---|---|
| Mary Doe | YES / NO |
| Kent Blackwelder | YES / NO |
| ARGI | YES / NO |
| Horah Graphics | YES / NO |

13

| | |
|---|---|
| Transcontinental Printing | YES / NO |
| National Envelope Co. | YES / NO |
| Commdirect | YES / NO |

  f. Do you find more parties at fault than SpecPub? If so, please apportion the fault:

| | |
|---|---|
| SpecPub | _____% |
| Mary Doe | _____% |
| Kent Blackwelder | _____% |
| ARGI | _____% |
| Horah Graphics | _____% |
| Transcontinental Printing | _____% |
| National Envelope Co. | _____% |
| Commdirect | _____% |

  3. Did Plaintiffs prove by a preponderance of the evidence that Defendant is liable for intentional infliction of emotional distress? If so:

    a. What compensatory damages, if any, is Plaintiff, Mary Doe, entitled to?

    b. Is the Plaintiff, Mary Doe, entitled to punitive damages? If so, what amount?

    c. What compensatory damages, if any, is Plaintiff, Kent Blackwelder, entitled to?

14

d. Is the Plaintiff, Kent Blackwelder, entitled to punitive damages? If so, what amount?

F. **STIPULATIONS OF FACT:** There are no stipulations of fact.

G. **NOVEL OR UNUSUAL QUESTIONS OF LAW OR EVIDENCE:**

1. Does an alleged violation of the provisions of 39 U.S.C. § 3009 *et seq.* provide a basis for an individual cause of action sounding in damages in tort?

2. Does a violation of the provisions of 39 C.F.R. 111.1 *et seq.* and the provisions of the Domestic Mail Manual provide for an individual cause of action sounding in tort?

3. Does Rule 508 of the Domestic Mail Manual provide for an individual cause of action sounding in tort?

4. Does the cause of action asserted by the Plaintiffs and the relief sought therein constitute an impermissible restriction upon the use of the mail and free speech as guaranteed by the First Amendment to the United States Constitution?

5. Does the publication complained of in the Complaint satisfy the constitutional definition of pornography or obscenity as a matter of law?

6. Does the Complaint, as a matter of law, state a cause of action?

7. Does any conduct complained of by the Plaintiffs rise to a level sufficient to justify an award of punitive damages as a matter of law pursuant to the laws of the State of Tennessee?

15

8. Should the trial of this cause be trifurcated and the segments of the trial be as follows:

TRIAL SEGMENT NO. 1 - As a matter of law, are the publications complained of obscene or pornographic?

TRIAL SEGMENT NO. 2 - Are the Plaintiffs entitled to compensatory damages from the Defendant?

TRIAL SEGMENT NO. 3 - Are the Plaintiffs entitled to punitive damages and, if so, what amount?

9. Are the Plaintiffs entitled to any injunctive relief as prayed for in paragraph 4 of the addendum to the Complaint?

**H. ESTIMATED LENGTH OF TRIAL (IN WORKING DAYS):** The estimated length of trial is two (2) to three (3) days.

**I. POSSIBILITY OF SETTLEMENT:** The parties submit that the possibility of settlement is moderate.

**J. MISCELLANEOUS MATTERS THAT MAY CONTRIBUTE TO THE JUST, SPEEDY, AND INEXPENSIVE DETERMINATION OF THE CASE:** None.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE